FILED
2013 Feb-07  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **BUFORD R. BRYANT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:11-CV-24-VEH** |
| | ) | |
| **IMERY'S CARBONATES LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

THIS CAUSE is before the court on the Defendant's Motion for Summary Judgment (the "Motion") (Doc. 26).  Plaintiff timely responded on October 15, 2012.  (Doc. 34.)  Defendant timely replied on November 11, 2012.  (Doc. 37.)  The Motion is now ripe for disposition.

## I.    FACTS

Defendant Imery's Carbonates LLC ("Imery's") operates a ground calcium carbonate processing facility in Sylacauga, Alabama.  Plaintiff Buford Bryant ("Bryant") began working for Imery's in 1999, when Imery's acquired Bryant's former employer.  In 2001, Imery's entered into a collective bargaining agreement with the United Steelworkers.  This agreement sets the terms and conditions of Bryant's employment.

Bryant worked as a mechanic.  The collective bargaining agreement divides Imery's mechanics into two classifications: Mechanic A's and Mechanic B's.  The dividing line between these two groups is a written test.  Mechanic B's who pass the test become Mechanic A's.  Mechanic A's are paid more than Mechanic B's and receive other benefits.  Imery's allows its Mechanic B's to take the test more than once.  Imery's contends that Mechanic A's possess greater skill than Mechanic B's.  However, it is undisputed that Mechanic A's and Mechanic B's perform the same duties.  (Doc. 34 at 14, ¶ 16; Doc. 34 at 15, ¶ 21; Doc. 37 at 2, ¶ 16.)  Additionally, it is undisputed that Imery's does not distinguish between Mechanic A's and Mechanic B's in its work assignments.  (Doc. 34 at 15, ¶ 23.)

Bryant has been a Mechanic B since Imery's negotiated the collective bargaining agreement in 2001.  Since that time, Bryant has taken Imery's Mechanic A test twice and failed both times.  After one of these tests, Bryant's supervisor told him he had failed by only one point.  Bryant asked the supervisor to give him an extra point, but he declined.[1]

Bryant was not the only Imery's employee who had difficulty passing the

---

[1]  The first test was designed by Shelby Halverson, an Imery's employee.  (Doc. 34 at 12, ¶ 5.)  It is unclear if the second test was the test developed by the Ramsey Corporation that Imery's currently uses.  (Doc. 32-4 at 3; Doc. 28-4 at 3, ¶ 6.)

Mechanic A test.  (*See* Doc. 33-2 at 5, 7.)  Perhaps for this reason, Imery's lowered the passing score on the Mechanic A test from a ninety-eight (98) to an eighty-nine (89).  (*See* Doc. 33-4 at 9.)  This change occurred in the spring of 2007.  However, even after this change, Bryant did not qualify to advance to a Mechanic A position.  (*See* Doc. 33-3 at 21) (showing Bryant scored a sixty-two (62) on the Mechanic A test).

In late 2007 and early 2008, Imery's offered an alternate route for its Mechanic B's to become Mechanic A's.  Mechanic B's could take eight training courses through the Alabama Technology Network.  If a Mechanic B passed all eight courses, he would become a Mechanic A.  Bryant participated in all eight courses and passed seven of them.  (Doc. 34 at 12, ¶ 8.)  He was not promoted.

Bryant contends that Imery's test requirement prevented him from becoming a Mechanic A.  Specifically, Bryant contends Imery's Mechanic A test has a disparate impact on African Americans.  It is unclear when Imery's began using the challenged test, but it is undisputed that Imery's last administered the test on January 12, 2010.  (Doc. 34 at 13, ¶ 11; Doc. 37 at 2.)

Bryant also contends that white employees received special treatment regarding the Mechanic A test.  To support this allegation, Bryant relies on the following evidence.  First, Bryant says that Tony Abrams (a white employee) told

3

him that he was given extra points so that he could pass.  (Doc. 33-1 at 13, ¶ 17.) Additionally, Bryant says that Charles Stephenson (a white employee) told him he never took or passed the Mechanic A test, and yet he was promoted to a Mechanic A position.[2]  (Doc. 33-1 at 13, ¶ 18.)

Second, Bryant says that two white employees, Timothy Denton and Tony Abrams, failed the Mechanic A test in 2006, but were still promoted to a Mechanic A position in 2007.  (Doc. 33 at 26.)  Imery's records do not show that these employees took and passed the Mechanic A test in 2007.  (*Id.*)  But, it is undisputed that both Denton and Abrams scored eighty-nine (89) or higher on their 2006 tests.  (*See* Doc. 32-3 at 5, 7.)

Third, Bryant says that two other white employees, Michael Black and Leslie Buchanan, became Mechanic A's although they never scored eighty-nine (89) or higher on the Mechanic A test.  (*See* Doc. 34 at 27–28; Doc. 33-3 at 21.) But, it is undisputed that both Black and Buchanan successfully completed all eight training courses offered through the Alabama Technology Network.  (Doc. 33-3 at 21.)

---

[2] To show white employees received special treatment, Bryant also relies on the Declaration of Joel McCain (Doc. 32-1 at 2–7), another African-American Mechanic B. However, because McCain's allegations are substantially similar to Bryant's allegations, the court's treatment of Bryant's Declaration applies equally to McCain's Declaration.  (*Compare* Doc. 32-1 at 7, ¶ 17–18 *with* Doc. 32-1 at 13, ¶ 17–18.)

In August 2009, Imery's decided to reduce its work force by twenty-five (25) per cent.  Imery's contends that a sharp decrease in demand for ground calcium carbonate spurred this decision.  At that time, Imery's employed twenty-five (25) Mechanic A's and seven (7) Mechanic B's.  There were only two (2) African-American Mechanic B's and no African-American Mechanic A's.[3]  Rather than lay off any Mechanic A's, Imery's elected to eliminate the Mechanic B position.  Imery's contends its decision was consistent with Article 13 of the collective bargaining agreement, which provides: "[a]ll cases of reduction or changes in the work force shall first be carried out within each classification, within each respective department."  (Doc. 28-4 at 15.)  It is undisputed that Imery's laid off all seven (7) Mechanic B's on September 1, 2009.

Under the collective bargaining agreement, Bryant could "bump" a less senior employee in a lower classification.  Bryant exercised this option and became a Dust Collector Technician.  In this position, Bryant is paid significantly less than he was as a Mechanic B.

On August 25, 2009, shortly after Bryant learned about the lay-off, he filed an EEOC charge alleging age discrimination.  In December 2009, Bryant amended

---

[3]  It is undisputed that there is one African-American classified as a Mechanic A, but that this person has different job duties and never had to take the Mechanic A test.  (Doc. 34 at 11, ¶ 3.)

5

his charge to include race discrimination and retaliation claims.  Finally, on

February 24, 2010, Bryant amended his charge to include a disparate impact race

discrimination claim.  (Doc. 28-2 at 22.)  After the EEOC issued Bryant a right-to-

sue letter, Bryant brought this action.

Bryant's Amended Complaint (Doc. 7) asserts four types of claims: (1)

disparate treatment under Title VII and 42 U.S.C. § 1981, (2) disparate impact

under Title VII, (3) unlawful age discrimination under the Age Discrimination in

Employment Act (ADEA), and (4) retaliation.

## II.    LEGAL STANDARD

### A.    General Summary Judgment Standard

Summary judgment is proper only when there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R .Civ. P. 56(a).  "All reasonable doubts about the facts" and "all justifiable

inferences" are resolved in favor of the nonmoving party.  *See Fitzpatrick v. City

of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).[4]  A dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[4] Rule 56 was amended in 2010. The Advisory Committee was careful to note, however, that "[t]he standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments.  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  The substantive law will identify which facts are material and which are immaterial.  *Id.*

The summary judgment analysis varies somewhat depending on which party bears the burden of proof at trial.  *See Fitzpatrick*, 2 F.3d at 1115–17.  If the moving party would bear the burden of proof on an issue, then it may meet its burden on summary judgment only by presenting positive evidence demonstrating an absence of a genuine issue of material fact—i.e., facts that would entitle the nonmoving party to a directed verdict if not controverted at trial.  *Id.* at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.  *Id.*

If the nonmoving party would bear the burden of proof on an issue at trial, then the moving party can satisfy its initial burden on summary judgment in either of two ways.  *Id.* at 1115–16.  First, the moving party may produce affirmative evidence negating a material fact, thereby demonstrating that the nonmoving party will be unable to prove its case at trial.  *Id.* at 1116.  If the moving party produces

7

such evidence, then the nonmoving party must respond with positive evidence sufficient to defeat a motion for a directed verdict at trial. *Id.*

Second, the moving party may affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on a material element. *Id.* The moving party is not required to produce evidence negating its opponent's claim, but it must direct the court to the hole in the nonmoving party's case. *Id.* at 1115–16.

If the moving party satisfies this burden, the nonmoving party may point to evidence in the record, or come forward with additional evidence, which would be sufficient to sustain a judgment at trial. *Id.* at 1116-17. The nonmoving party cannot simply rest on mere allegations; he must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358, 116 S. Ct. 2174, 2183 (1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136–37 (1992)).

**B.   Relevant Substantive Law[5]**

1.   Bryant's Disparate Treatment Claims

Bryant alleges disparate treatment claims under Title VII and 42 U.S.C.

---

[5] As discussed at Section III.C *infra*, Bryant has abandoned his age discrimination and retaliation claims. Thus, the court will not discuss the substantive law relevant to such claims.

8

§ 1981. "Both of these statutes have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Thus, the following statement of the law applies equally to both claims.

Bryant does not argue that he has direct evidence of discrimination. Therefore, the court will analyze Bryant's claim under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Standard*, 161 F.3d at 1331.

> Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to [an] adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination.
>
> . . . As part of the Title VII plaintiff's prima facie case, the plaintiff must show that his employer treated similarly situated employees outside his classification more favorably than [himself]. To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects. In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (internal citations

omitted).  Once a plaintiff establishes a prima facie case, the defendant must produce a legitimate nondiscriminatory reason for its employment decision.  *See Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).  If the defendant meets its burden of production, then the plaintiff must come forward with evidence sufficient to support an inference that unlawful discrimination actually motivated the defendant's decision.  *Id.*  A plaintiff may meet his burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981).

### 2.   Timeliness of Title VII Disparate Treatment Claims

It is well settled that a Title VII plaintiff must file a charge of discrimination within one hundred and eighty (180) days of the allegedly unlawful employment practice.  *See* 42 U.S.C. § 2000e-5(e)(1); *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992).  However, the Eleventh Circuit distinguishes between employment practices or decisions which are discrete acts and practices or decisions which are continuing violations.  *See Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992) ("Where an employee charges an employer with continuously maintaining an illegal employment practice, he may

file a valid charge of discrimination based upon that illegal practice until 180 days
after the last occurrence of an instance of that practice.  However, where the
employer engaged in a discrete act of discrimination more than 180 days prior to
the filing of a charge with the EEOC by the employee, allegations that the
discriminatory act continues to adversely affect the employee or that the employer
presently refuses to rectify its past violation will not satisfy the requirement of 42
U.S.C. § 2000e-5(e) . . . .").  A discrete act usually involves a single instance of
discrimination.  *See id.* at 797.  Conversely, a continuing violation usually
involves a policy or practice.  *See id.* at 796–97.

In *Beavers v. American Cast Iron Pipe Co.*, the Eleventh Circuit explained
this distinction.  975 F.2d 792.  The defendant in *Beavers* maintained a policy of
denying insurance coverage to children of its employees who did not reside with
the employee.  It was undisputed that the plaintiff had failed to file a charge of
discrimination within one hundred and eighty (180) days of becoming subject to
this policy.  *See id.* at 796.  Nonetheless, the Eleventh Circuit found that the
plaintiff's claim was timely.  *Id.* at 798.  The court reasoned that, because the
defendant denied insurance coverage under an established policy, each week the
defendant continued to deny insurance coverage was a new wrong actionable
under Title VII.  *Id.*

11

Additionally, the *Beavers* court applied the standard from a former Fifth Circuit case, *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249 (5th Cir. 1980).[6]  In *Gonzalez*, the plaintiff alleged that the defendant discriminated against him through a testing system.  In reversing the district court, the Fifth Circuit said, "Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days <u>after the last occurrence of an instance of that practice.</u>" *Id.* at 249 (emphasis added).  Thus, the Fifth Circuit concluded that, if the defendant had continued to use the allegedly discriminatory testing system within the one hundred and eighty (180) days before plaintiff had filed his charge of discrimination, then his claim was timely.  *Id.*

## III.   ANALYSIS

### A.   Bryant's Disparate Treatment Claims

As explained earlier, Title VII and § 1981 involve the same standards of proof and use the same analytical framework.  *See Standard*, 161 F.3d at 1330.  Therefore, the court's analysis of Bryant's Title VII claim applies equally to his § 1981 claim with one exception noted below.

---

[6]  In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Bryant appears to challenge two separate and independent employment actions.  First, Bryant clearly challenges Imery's decision to lay him off.  Second, Bryant appears to challenge Imery's failure to promote him to a Mechanic A position.  The court will address each in turn.

For purposes of the Motion, Imery's does not seriously contest that Bryant has established three elements of a prima facie case regarding his lay-off:  (1) Bryant is in a protected group, (2) he suffered an adverse employment action (the lay-off), and (3) he is qualified to work as a Mechanic B.  Imery's focuses instead on the fourth element of Bryant's prima facie case: whether Imery's treated similarly situated non-African-Americans differently than Bryant.

Bryant's claim fails because he cannot establish this fourth element.  It is undisputed that Imery's laid off all seven (7) Mechanic B's in September 2009.  Because Imery's laid off all the Mechanic B's, it could not have treated any Mechanic B better than any other Mechanic B.[7]  Thus, Bryant has failed to establish a prima facie case of disparate treatment regarding the lay-off.

And, even if Bryant could make out a prima facie case, he has not shown that Imery's legitimate, nondiscriminatory reason for the lay-off was a pretext for

---

[7]  Two of the Mechanic B's (Bryant and Joel McCain) were African-American; the other five Mechanic B's were not African-American.

13

discrimination.  Imery's says it instituted the lay-off because of a decrease in sales. (Doc. 27 at 8, ¶ 12.)  It is undisputed that, as part of the lay-off, Imery's eliminated all Mechanic B's from its workforce.  Imery's contends it eliminated the Mechanic B position in part because the Mechanic B's possessed less skill than Mechanic A's and in part because Article 13 of the collective bargaining agreement required the lay-off to progress through the Mechanic B classification before reaching the Mechanic A's.  Doc. 27 at 8, ¶ 13; *see also* Doc. 28-4 at 15 ("All cases of reduction or changes in the work force shall first be carried out within each classification, within each respective department.").

Bryant has offered no evidence or argument that Imery's did not have a decrease in sales.  Nor has Bryant challenged Imery's decision to reduce its work force.  Instead, Bryant challenges the way that Imery's reduced its work force.  Specifically, he disputes whether the Mechanic A's were in fact more skilled than the Mechanic B's.

Even assuming that Bryant is correct, his contention does not show that the lay-off was a pretext for discrimination.  It is undisputed that Imery's required Mechanic B's to pass the Mechanic A test to become a Mechanic A.  Apparently, Imery's views the Mechanic A test as an indicator of skill level.  The court expresses no opinion on the wisdom of Imery's view.  It notes only that Imery's

14

view is a permissible business judgment so long as the Mechanic A test does not unlawfully discriminate against Imery's employees.  It is undisputed that Bryant never passed the Mechanic A test.  Because Bryant never passed the test, he never became a Mechanic A.  And, because Bryant was a Mechanic B instead of a Mechanic A, Imery's viewed him as a lesser skilled mechanic.  Imery's says it included Bryant in the lay-off for that reason.  Bryant has produced no evidence from which a reasonable jury could infer Imery's reason is merely a pretext for discrimination.[8]  For this alternate reason, Bryant's disparate treatment claim related to the lay-off fails.

Bryant also contends that several white employees were promoted to a Mechanic A position either without having to take the Mechanic A test or despite having failed it.   These contentions are immaterial to Bryant's lay-off claim. Admittedly, if Imery's had promoted Bryant to a Mechanic A position, he would not have been included in the September 2009 lay-off.  But, if that is Bryant's

---

[8]  Furthermore, Bryant does not argue that Imery's improperly applied Article 13 of the collective bargaining agreement.  Because this legitimate non-discriminatory reason remains unchallenged, Imery's is entitled to summary judgment on Bryant's disparate treatment claims related to the lay-off.  *See Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.")

theory, then Bryant concedes the lay-off decision was motivated by his Mechanic B classification, not his race.  Thus, it appears Bryant is actually challenging Imery's failure to promote him.

If Bryant is challenging Imery's failure to promote him, his claims also fail.  Here, the Title VII and § 1981 analyses diverge.  Bryant's Title VII failure-to-promote claim fails because it is untimely.  It is undisputed that Bryant last tried to become a Mechanic A through the Alabama Technology Network's training course in late 2007 and early 2008.  Bryant failed to file an EEOC charge within one hundred and eighty (180) days of Imery's failure to promote him after that course.  Thus, Bryant's Title VII failure-to-promote claim is time barred.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002).[9]

Bryant's § 1981 failure-to-promote claim fails because Bryant has no admissible evidence showing he was treated differently than white employees.  At summary judgment, a district court may not consider evidence which could not be reduced to an admissible form at trial.  *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999).  Bryant alleges that Imery's allowed two white employees,

---

[9]  The statute of limitations for a § 1981 claim is four years.  *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337–38 (11th Cir. 2008).  Thus, Bryant's § 1981 failure-to-promote claim is timely.

Charles Stephenson and Tony Abrams, to become Mechanic A's without passing the Mechanic A test. (*See* Doc. 33-1 at 13, ¶ 17–18.) Specifically, Bryant says that Stephenson informed him that he was promoted without having to take, much less pass, the Mechanic A test. (Doc. 33-1 at 13, ¶ 18.) Bryant also says that Abrams said that he received extra points from Shelby Halverson, a white supervisor, so he could pass the Mechanic A test. (Doc. 33-1 at 13, ¶ 17; Doc. 34 at 28.) Because Bryant offers Stephenson's and Abrams's statements for their truth, the statements are hearsay and, therefore, inadmissible. (*See* Doc. 37 at 15–16) (objecting to Bryant's Declaration). Thus, the court cannot consider these statements in resolving Imery's Motion.

Bryant's other evidence, although admissible, does not show that Imery's gave white employees special treatment. First, Bryant contends that two white employees, Timothy Denton and Tony Abrams, failed the Mechanic A test in 2006, but still became Mechanic A's in 2007. (Doc. 33 at 26.) Bryant argues that Imery's records do not show that these employees took and passed the test in 2007. (*Id.*) However, Bryant overlooks the fact that, in the Spring of 2007, Imery's lowered the passing score on the Mechanic A test to an eighty-nine (89). (Doc. 32-4 at 9.) Both Denton and Abrams scored eighty-nine (89) or higher when they took the test in 2006. (Doc. 32-2 at 5, 7.) Thus, their promotions in

17

2007 are consistent with Imery's decision to lower the passing test score.  Put simply, Imery's lowered its standards, which made previously unqualified individuals qualified.  Conversely, Bryant did not qualify for a Mechanic A position, even under Imery's lower standards.  (*See* Doc. 33-3 at 21) (showing Bryant scored a sixty-two (62) on the Mechanic A test).  That Denton and Abrams did not retake the test in 2007 does not matter.

Second, Bryant contends that Michael Black and Leslie Buchanan became Mechanic A's although they never scored eighty-nine or higher on the Mechanic A test.  (*See* Doc. 34 at 27–28; Doc. 33-3 at 21.)  But again, Bryant overlooks the fact that both Black and Buchanan successfully completed all eight training courses offered through the Alabama Technology Network.  (Doc. 33-3 at 21.) Therefore, these men qualified to become Mechanic A's through an alternate route that was also available to Bryant.  Bryant, like Black and Buchanan, also participated in the eight training courses, but Bryant only successfully completed seven of them.  Thus, Bryant did not qualify to become a Mechanic A through this alternate route.  Because Abrams, Denton, Black, and Buchanan all qualified to become Mechanic A's (either by passing the Mechanic A test or completing the eight training courses), they are not similarly situated to Bryant, who never qualified to become a Mechanic A.  Thus, their promotions do not show that

18

Imery's treated white employees better than Bryant.

Because Bryant has no admissible evidence which shows that Imery's treated him less favorably than a similarly situated white employee, he cannot establish a prima facie case on his § 1981 failure-to-promote claim.[10]

For the foregoing reasons, Bryant has failed to establish a prima facie case of disparate treatment under Title VII or § 1981.  Additionally, regarding Bryant's lay-off claims under Title VII and § 1981, he has not shown pretext.  Finally, Bryant's Title VII failure-to-promote claim is untimely.  Thus, Imery's Motion is due to be **GRANTED** as to Bryant's disparate treatment claims.

### B.    Bryant's Title VII Disparate Impact Claim

Count II of Bryant's Amended Complaint alleges a disparate impact violation under Title VII.  (Doc. 7 at 5.)  Imery's contends that Bryant's disparate impact claim is untimely.  (Doc. 27 at 12 n.2.)  The court rejects this argument.

*Gonzalez* is directly on point.  In *Gonzalez*, the former Fifth Circuit said, "Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of

---

[10]  Even if Bryant's Title VII failure-to-promote claim were timely, it would fail for the same reasons set out in the court's analysis of Bryant's § 1981 failure-to-promote claim.

that practice." 610 F.2d at 249.  In *Gonzalez*, the allegedly unlawful employment

practice was a written test.  *Id.*  Here, like *Gonzalez*, Bryant contends Imery's

Mechanic A test prevents him and other African Americans from becoming

Mechanic A's.  It is undisputed that a white employee took and passed the

Mechanic A test on January 12, 2010.  (Doc. 34 at 13, ¶ 11; Doc. 37 at 2 n.1.)

Forty-three (43) days later, on February 24, 2010, Bryant amended his EEOC

charge to include a disparate impact claim.  (Doc. 34 at 13, ¶ 12; Doc. 37 at 2 n.1.)

Thus, Bryant's disparate impact charge is timely because it came within one-

hundred eighty (180) days of the last use of Imery's allegedly discriminatory test.

*See Beaver*s, 975 F.2d at 798; *Gonzalez*, 610 F.2d at 249.[11]

   In its Reply, Imery's contends—for the first time—that Bryant's disparate

impact claim fails on the merits.  (Doc. 37 at 8–14.)  The court will not consider

these arguments because Imery's failed to raise them in their initial summary

judgment brief.  Doc. 27; *see, e.g.*, *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d

1338, 1342 (11th Cir. 2005) (explaining that a court need not consider arguments

or issues raised for the first time in a party's reply brief).  Thus, Imery's Motion is

---

[11]  Because the court finds that Bryant's claim is timely under *Gonzalez* and *Beavers*, the court does not address Bryant's argument that his claim is timely under the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5.

due to be **DENIED** as to Bryant's disparate impact claim.[12]

### C.    Bryant's Other Claims

Counts III and IV of Bryant's Amended Complaint allege claims for

violations of the ADEA and for retaliation.  (Doc. 7 at 6.)  Because Bryant has

failed to present any argument on these claims, these claims are abandoned.  *See,*

*e.g.*, *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d

1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue

during the proceedings before the district court is grounds for finding that the

issue has been abandoned."); *see also McMaster v. United States*, 177 F.3d 936,

940–41 (11th Cir. 1999) (claim may be considered abandoned when district court

is presented with no argument concerning a claim included in the plaintiff's

complaint); *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998)

(finding unaddressed claim abandoned).

## IV.    CONCLUSION

---

[12]  A disparate impact claim requires: (1) a statistical disparity between a protected and non-protected class, (2) a facially neutral employment practice, and (3) a causal connection between the disparity and the employment practice.  *See EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000).  The third element requires "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group."  *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S. Ct. 2777, 2789 (1988).  In its Reply, Imery's contends that Bryant lacks any statistical evidence to support his disparate impact theory.  (Doc. 37 at 9–11.)  If Bryant indeed has no statistical evidence to support his disparate impact claim, as Imery's contends, he will be unable to prove this claim at trial.

For these reasons, Imery's Motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

A.   On Bryant's Disparate Treatment Claims (Count I), the Motion is **GRANTED**.

B.   On Bryant's Disparate Impact Claim (Count II), the Motion is **DENIED**.

C.   On Bryant's ADEA Claim (Count III), the Motion is **GRANTED**.

D.   On Bryant's retaliation claims (Count IV), the Motion is **GRANTED**.

The court will set a final pretrial conference by separate order.

**DONE** and **ORDERED** this the 7th day of February, 2013.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge